Matter of the Application of JOHN F. HYLAN, as Mayor of the City of New York, CHARLES L. CRAIG, as Comptroller of the City of New York, ALFRED E. SMITH, as President of the Board of Aldermen of the City of New York, FRANK L. DOWLING, as President of the Borough of Manhattan, EDWARD RIEGELMAN, as President of the Borough of Brooklyn, HENRY BRUCKNER, as President of the Borough of The Bronx, MAURICE E. CONNOLLY, as President of the Borough of Queens, and CALVIN D. VAN NAME, as President of the Borough of Richmond, as and Constituting the Board of Estimate and Apportionment of the City of New York, and ALFRED J. JOHNSON, as City Chamberlain of the City of New York, and WILLIAM P. BURR, as Corporation Counsel of the City of New York for a Writ of Prohibition against THOMAS E. FINEGAN, as Acting Commissioner of Education of the State of New York.

(Supreme Court, Albany Special Term, January, 1919.)

Prohibition — when application for a writ of, denied — schools — municipal corporations — Greater New York Charter, § 1102 — Education Law, § 490, as amended in 1910.

In the absence of the commissioner of education the deputy commissioner is the chief executive officer of the state system of education, and the responsibility of the enforcement of all general and special laws relating thereto rests upon him.

Section 490 of the Education Law, as amended in 1910, provides that all moneys apportioned for the support of common schools shall be applied exclusively to the payment of teachers' salaries. By chapter 181 of the Laws of 1917 an appropriation was made for the support of the common schools for the school year of 1917–1918. Upon receipt of the moneys apportioned to the city of New York for educational purposes they were, upon the contention of the board of esti-

mate and apportionment, deposited with the city chamberlain and credited to the general fund for the reduction of taxation under section 1102 of the Greater New York Charter. The chief executive officer of the school district of the city, contending that said money should be credited to the board of education and, under section 490 of the Education Law, as amended in 1910, applied exclusively to the payment of teachers' salaries, brought the controversy to the attention of the acting commissioner of education of the state and asked that an investigation be made to determine whether a lawful disposition of the school moneys so apportioned had been made by the city authorities. *Held,* that there being a serious question as to the disposition of the moneys of the state apportioned to the board of education of the city from the said appropriation, the city superintendent of schools was officially aggrieved and justified in acting as he did, and an application by the board of estimate and apportionment of the city and other city officials for a writ of prohibition to prevent the commissioner of education from taking official action under and pursuant to the provisions of the Education Law will be denied.

APPLICATION for a writ of prohibition.

William P. Burr, corporation counsel (George P. Nicholson, William E. C. Mayer, of counsel), for petitioners.

H. Le Roy Austin, special counsel, for the city of New York.

Frank B. Gilbert, for commissioner of education.

Charles D. Newton, attorney-general (Claude T. Dawes, deputy attorney-general, of counsel), for state of New York.

RUDD, J. Application is made for a writ of prohibition. The petitioners are the officials constituting the board of estimate and apportionment of the city of New York, uniting with the city chamberlain and the corporation counsel of the city of New York. The

petitioners complain that Thomas E. Finegan, as act-
ing commissioner of education of the state of New
York, is unlawfully and illegally assuming " to adjudi-
cate and determine the proper and lawful disposition
of public moneys apportioned to the City of New York
under and pursuant to the provisions of the Education
Law."

Thomas E. Finegan, the deputy commissioner of edu-
cation of the state, is acting commissioner of education,
in the absence of the commissioner of education, and as
such acting commissioner he is the chief executive
officer of the state system of education, and upon him
falls the responsibility of the enforcement of all gen-
eral and special laws relating to the educational system
of the state.

The legislature of the state (Laws of 1917, chap.
181) appropriated for the support of common schools
during the school year of 1917–1918 $6,000,000 under
the Education Law, sections 490 and 491, as amended
by chapter 140 of the Laws of 1910. There was appor-
tioned out of this fund for the support of the common
schools in the city of New York the sum of $2,321,-
191.13. This sum was paid in the manner provided by
sections 494 and 497 of the Education Law. The entire
appropriation of $6,000,000 is made in accordance with
the law : " For the expenses of maintenance and opera-
tion, other than personal service, of the State Educa-
tion Department." The amount apportioned by the
commissioner of education to the cities and school dis-
tricts of the state respectively is towards the support
of the common schools and for no other purpose. It is
provided in section 490 of the Education Law, as
amended by chapter 140 of the Laws of 1910, that " all
moneys so apportioned (for the support of common
schools) shall be applied exclusively to the payment
of teachers' salaries."

The superintendent of schools of the school district of New York, N. Y., who is the chief executive officer of that school district, called the attention of the acting commissioner of education of the state to a controversy which had arisen between the civil authorities of the municipality (with which the school district of New York, N. Y., is geographically coterminous), on the one hand, and the board of education and himself, as superintendent of schools, on the other.

· This controversy grew out of the fact that when the moneys apportioned were received by the city authorities of New York city they were deposited with the chamberlain of the city, and credited to the general fund for the reduction of taxation in the city of New York; the superintendent of schools of the city of New York contending that the moneys thus apportioned by the state to the school district of New York for educational purposes should be credited to the board of education, and the said moneys so apportioned should be applied, under section 490 of the State Education Law, exclusively to the payment of teachers' salaries.

The superintendent of schools of the school district of New York alleges that this controversy is disturbing the peace of the public school system of the district and impairing the authority and management of the board of education and its officers.

The school funds are placed for safe keeping in the treasury of the city in the custody of the chamberlain. The city authorities making up the board of estimate and apportionment contend that these funds thus apportioned to the school district of New York and received by the chamberlain of the city for safe keeping should be by the chamberlain credited to the general fund for the reduction of taxation in the city of New York under section 1102 of the charter.

The superintendent of schools, speaking for the board of education of the city of New York, contends that these moneys when deposited with the chamberlain should be credited as above stated under section 490 of the Education Law, so that such funds would be applicable by the board of education of the city of New York to the payment of teachers' salaries.

This controversy no doubt before it is finally determined will involve the effect of certain statutory provisions concerning the disposition of this money to which reference has already been made. There has been a diversity of opinion among the municipal authorities. Under the administration of Mayor Mitchel in the city of New York the corporation counsel advised that "It would not be proper to pay into the general fund for the reduction of taxation the amount of the appropriation to the city from school funds appropriated by the state." Affidavit, Acting Commissioner Finegan, folio 6. The administration of Mayor Mitchel acted accordingly.

One of the members of the present board of estimate and apportionment of the city of New York, Comptroller Craig, differs as to the construction of the statutory provisions from the conclusion reached by the corporation counsel in the former administration, and he writes a memorandum in which he expresses the conclusion that section 1102 of the city charter has not been repealed by section 880 of the Education Law as amended by chapter 786 of the Laws of 1917. The present corporation counsel of the city of New York concurs in the views expressed by Comptroller Craig, and he holds that section 1102 of the charter remains in full force and effect. The portion of section 1102 of the city charter which is involved reads: " the chamberlain of the said city shall apply for and receive the school moneys apportioned to the said city as soon as

44

the same become payable, and place the same in the city treasury, to the credit of the general fund for the reduction of taxation."

In asking for the writ of prohibition the petitioners aver that the state commissioner of education " is usurping and attempting to usurp judicial functions which do not belong to and are not vested in his office," which judicial functions belong only to the Supreme Court.

Under the Education Law the commissioner of education is the chief executive officer of the state system of education. § 94. He is the administrative head of the education department. It is his duty to enforce all general and special laws relating to the educational system of the state. One of the functions of the state commissioner is the distribution and disposition of large annual appropriations by the state for the support of the common schools, and under section 96 of the Education Law he is given the power " to cause to be instituted such proceedings or processes as may be necessary to properly enforce and give effect to any provision in this chapter or *in any other general or special law pertaining to the school system of the state or any part thereof or to any school district or city.*"

Section 890 of the Education Law provides: "Any person conceiving himself aggrieved may appeal by petition to the commissioner of education who is hereby authorized and required to examine and decide the same; and the commissioner of education may also institute such proceedings as are authorized under this act and his decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever. Such appeal or petition may be made in consequence of any action. * * *

"' 7. By any other official act or decision of any officer, school authorities or meetings concerning any other matter under this chapter, or any other act pertaining to common schools."

Thus when the superintendent of schools of the city of New York, feeling himself aggrieved, addressed a petition to the acting commissioner of education of the state calling his attention to the controversy which has arisen under the statute, the acting commissioner of education sought to investigate, with a view of determining whether under the law the disposition of the school moneys, apportioned by the state education department to the school district of New York, has been made by the municipal authorities in accordance with the law.

In the proposed investigation the acting commissioner of education gave notice thereof to all municipal officers concerned, to the end that every phase might be developed, leading to a determination by the commissioner.

By writ of prohibition the petitioners seek to prevent such inquiry on the part of the acting commissioner, the principal contention being that the commissioner can not determine whether there has been a diversion of the school moneys without passing upon the question as to whether section 1102 of the city charter has by implication been repealed by the enactment of chapter 786 of the Laws of 1917, and that the commissioner is not vested with jurisdiction to make such decision, that being a question alone for the court.

It is urged by the corporation counsel that the only question is whether section 890 of the Education Law justifies the commissioner to take jurisdiction in " a proceeding instituted by him to determine the question as to whether or not Section 1102 of the city charter has been repealed by implication."

It is respectfully submitted that that is not the only question.

If such a question faces the commissioner can it be that he should hesitate to do that which the Education Law requires and compels him to do, and for the doing of which the petitioners specifically complain, as set forth in the order to show cause under which this application is made, namely, " to adjudicate and determine the proper and lawful disposition of public moneys apportioned to the City of New York under and pursuant to the provisions of the Education Law?" The petitioners ask that the commissioner desist and refrain from doing that which it seems to this court the commissioner is required to do.

The public schools of this state are operated under a state system created by the provisions of the Constitution of the state (art. 9, § 1). Public education is a state matter. The schools are open to all the children of the state, and the city schools are operated as a part of the system. Local municipal authorities aid in the administration and control of city schools, but the schools remain nevertheless state institutions. There can be no more important question than as to the disposition of the state's moneys when appropriated and in turn under the law apportioned to a particular school district. The local municipal authorities cannot divert school money from its intended purpose; they cannot use it for any municipal object however worthy; they can only receive it, guard it, and use it in connection with the schools and for the purposes alone of the schools.

This court is not called upon to determine, notwithstanding what we have just said, whether or not the authorities of the city of New York were justified under one law or another in the disposition of the particular moneys involved in this inquiry. We are concerned

only with the question of whether or not the state department of education having guardianship over the funds from the time that they are taken out of the custody of the treasury of the state and are apportioned under the state system in accordance with the Education Law for a specific purpose in a certain locality or school district can, when the attention of the department is called to the fact that those moneys have been credited to an account and for a purpose which is not in accordance with the Education Law of the state, make inquiry concerning such disposition and reach a determination concerning the same.

It seems as if there had been vested in the state commissioner of education supervisory powers and control which would justify and authorize and in fact compel an inquiry on his part officially as to whether school moneys apportioned to a school district were devoted to the purposes for which under the law they were appropriated.

The city superintendent of schools of the city of New York under oath alleges that these moneys have been diverted from their legal use and are applied or are to be applied in reduction of taxes of the city of New York, and that thus the board of education of the city of New York has been deprived of the control over such funds so far as the use of the same for the very purpose for which under the law they must be used and can only be used.

The city superintendent of schools is justified in the application which he makes. He is officially aggrieved. He has a right to petition the commissioner of education, and such petition cannot by the state commissioner be ignored. The jurisdiction of the commissioner of education is not confined to the consideration only of such questions as may arise under a general law, for it has been determined that the validity of an

act of the board of education of the city of New York, which was attacked for the reason that it violated the provision of the city charter, was a subject for review by the state commissioner of education, and that his determination concerning the same was final. *People ex rel. Board of Education* v. *Finley,* 211 N. Y. 51.

The corporation counsel argues that because of section 1102 of the city charter which was not specifically repealed by chapter 786 of the Laws of 1917, and because it must be assumed that the chamberlain of the city will act in good faith in the performance of his duties under the law, that there is no legal justification for the inquiry by the acting commissioner of education of the state, and that the commissioner should not be given an opportunity to investigate or make inquiry or determination with reference to the disposition of the school moneys, because in so doing he would be called upon to pass upon the question which the petitioners claim is purely one for the courts, as to whether section 1102 of the city charter has been repealed by implication.

The question whether a statute has been repealed by implication is a legal question and it may be a question alone for the court to determine, but because such question may arise is not a controlling reason why the commissioner of education should not be permitted to pass upon a petition which is addressed to him by the school authorities of the city of New York, and which calls his attention to the fact that the school moneys appropriated by the state and apportioned by the commissioner to the city of New York are in danger of being used for some purpose for which it is claimed under the law they cannot properly and legally be used.

The counsel for the city of New York fears that the real question has been lost in the discussion. He calls

our attention to the nature of a writ of prohibition and says that it is an extraordinary judicial writ issuing out of a court of superior jurisdiction and directed to an inferior court for the purpose of preventing the inferior tribunal from usurping a jurisdiction with which it is not lawfully vested.

That is what the court understands to be the nature of the writ, and the question involved is, as stated by counsel, whether under the law the inferior tribunal, which in this case happens to be the acting commissioner of education, is usurping a function or a jurisdiction which under the law is not his.

The argument addressed to the court is that because there is possibly a question here as to whether by implication a section of the city charter of New York has or has not been repealed, that therefore the commissioner of education has no jurisdiction under the law to entertain an application addressed to him by the superintendent of schools to inquire into a controversy which exists between the municipal authorities of the city of New York and the school board of the city of New York with reference to the disposition of state funds appropriated for the public schools of that city.

The question of jurisdiction is not determined by the power which may be in the court to review. His determination may be such that under the law it is not reviewable, or it may be subject to review, but whatever it may be, is not controlling upon the question whether or not under the law the state commissioner of education has the power to make an inquiry and if necessary make a determination concerning the disposition of school moneys.

In *Bullock* v. *Cooley,* 183 App. Div. 527–533, Justice Putnam said, referring to the questions under examination: " This leaves for consideration the finality of

the decision of the Commissioner of Education under section 880 of the Education Law.''

The court held that the commissioner's determination as to the construction of the Education Law is reviewable. If it is, that does not justify a conclusion that the commissioner had no power in the first instance to reach a conclusion with reference thereto.

The commissioner is not usurping a jurisdiction with which he is not lawfully vested.

There is no specific provision in the Education Law which authorizes the commissioner of education to make a final determination not reviewable in any court as to the question whether or not a statute has been repealed by implication. The commissioner of education, as contemplated evidently by the law, in exercising the power conferred upon him to determine educational controversies, may be called upon to pass upon the meaning and application of statutes, or in other words he may make a statutory construction. Such determination may be subject to review, but whether it is or not, is not the question for the Special Term to determine.

It is evident from the contention on the part of the city authorities, as well as from the presentation made by the state department of education, that there is a serious question here relating, above everything else, to the disposition of the school moneys of the state, moneys apportioned by the education department from the appropriation by the state towards the support and maintenance of the public schools of the city of New York. There being such a question, upon application by the superintendent of schools of the city of New York for an inquiry to be made under the law. by the chief executive administrator of the law, who is responsible for its enforcement to the letter and who must see that the disposition of the moneys, which

as a department official he has apportioned, it seems as if there should be no question as to whether or not the commissioner of education should make the inquiry which the school board of the city of New York asks him to make.

We are not at this stage concerned as to what his determination may be. He should not be prevented from making the inquiry and discharging his full duty as to the matters involved.

The application for the writ is denied, with fifty dollars costs.

Application denied, with costs.